## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JIANGMING JIANG** )<br><br>**LIGUO DING** )<br><br>**CHUNQIU DUAN** )<br><br>**YONGQIANG SONG** )<br><br>Plaintiffs, )<br>-v- )<br><br>**MATSU CORP.** )<br>d/b/a/ Matsu Sushi Restaurant )<br>33 Jessup Rd. )<br>Westport, CT 06880 )<br><br>**KIM MING "MARTY" CHENG** )<br>6313 Boulevard E. )<br>West New York, NJ 07093 )<br><br>**ZIQIAO "MICHAEL" CAO** )<br>16 Woodhill Road )<br>Trumbull, CT 06611 )<br><br>Defendants. ) | Civil Action 3:17-cv-02011 (SRU) |

**JIANGMING JIANG**

**LIGUO DING**

**CHUNQIU DUAN**

**YONGQIANG SONG**

            Plaintiffs,

   -v-

**MATSU CORP.**
   d/b/a/ Matsu Sushi Restaurant
   33 Jessup Rd.
   Westport, CT 06880

**KIM MING "MARTY" CHENG**
   6313 Boulevard E.
   West New York, NJ 07093

**ZIQIAO "MICHAEL" CAO**
   16 Woodhill Road
   Trumbull, CT 06611

            Defendants.

Civil Action 3:17-cv-02011 (SRU)

## ANSWER TO COMPLAINT

Defendants, by their attorney, Elio C.C. Morgan, as and for their Answer to the Complaint, allege as follows:

1.    Deny each and every allegation contained in paragraph 1.

2.    Deny each and every allegation contained in paragraph 2 except admit that

plaintiffs were employed by both Matsu Sushi and Matsuri and that plaintiffs have brought this action seeking certain relief.

    3.    Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 3.

    4.    Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 4.

    5.    Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 5.

    6.    Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 6 except admit that Jiang worked as a hibachi chef but deny that he was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1) and Conn. Gen. Stat. §§ 31-58(e) and 31-71a(2).

    7.    Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 7 except admit that Ding worked as a hibachi chef but deny that he was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1) and Conn. Gen. Stat. §§ 31-58(e) and 31-71a(2).

    8.    Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 8 except admit that Duan worked as a sushi chef but deny that he was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1) and Conn. Gen. Stat. §§ 31-58(e) and 31-71a(2).

    9.    Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 9 except admit that Song worked as a sushi chef

but deny that he was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1) and Conn. Gen. Stat. §§ 31-58(e) and 31-71a(2).

10.     Admit the allegations contained in paragraph 10 except deny that Cheng "co-owned" Matsu Grill Co. LLC.

11.     Deny the allegations contained in paragraph 11 except admit that Cao is a resident of Trumbull, Connecticut.

12.     Deny each and every allegation contained in paragraph 12.

13.     Admit the allegations contained in paragraph 13.

14.     Admit the allegations contained in paragraph 14.

15.     Deny each and every allegation contained in paragraph 15.

16.     Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 16.

17.     Deny each and every allegation contained in paragraph 17.

18.     Deny each and every allegation contained in paragraph 18 except admit that Kim Ming Cheng and Ziqiao Cao co-founded Matsu Sushi with a nonparty, Mr. Yang, and that Cheng and Cao bought out Yang's stake.

19.     Admit the allegations contained in paragraph 19 except deny that Matsu Sushi was necessarily a highly successful business during the entire 15 or so years since its establishment.

20.     Deny each and every allegation contained in paragraph 20.

21.     Deny each and every allegation contained in paragraph 21 (and have a continuing objection to the use of the word "Bosses" to describe defendants Cheng and

Cao) except admit that Matsuri was opened in August, 2014.

22.    Deny each and every allegation contained in paragraph 22 except admit that some employees worked at both restaurants.

23.    Deny each and every allegation contained in paragraph 23.

24.    Deny each and every allegation contained in paragraph 24 except admit that Matsuri did not enjoy the same success as Matsu Sushi and that it closed in 2017.

25.    Deny each and every allegation contained in paragraph 25 except admit that Cheng and Cao are part of the ownership of Matsu Corp. and own equal shares.

26.    Admit the allegations contained in paragraph 26.

27.    Deny each and every allegation contained in paragraph 27 except admit that Cheng and Cao were part of the ownership of Matsuri.

28.    Admit the allegations contained in paragraph 28.

29.    Deny each and every allegation contained in paragraph 29.

30.    Deny each and every allegation contained in paragraph 30.

31.    Deny each and every allegation contained in paragraph 31.

32.    Deny each and every allegation contained in paragraph 32.

33.    Deny each and every allegation contained in paragraph 33.

34.    Deny each and every allegation contained in paragraph 34.

35.    Admit the allegations contained in paragraph 35.

36.    Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph "35" except admit that Mr. Jiang worked at Matsu Sushi as a hibachi chef continuously from March, 2002 until sometime in 2011

and that he earned a salary of at least $575.00 per week during the period from 2008 to 2011.

37.     Deny each and every allegation contained in paragraph 37 except admit that Mr. Jiang worked at Matsu Sushi and Matsuri restaurants.

38.     Deny each and every allegation contained in paragraph 38.

39.     Deny each and every allegation contained in paragraph 39 except admit that Mr. Jiang purchased groceries for staff members.

40.     Deny each and every allegation contained in paragraph 40 except admit that Mr. Jiang participated in fulfilling big orders.

41.     Deny each and every allegation contained in paragraph 41 except admit that all of the chefs participated in fulfilling big orders.

42.     Deny each and every allegation contained in paragraph 42.

43.     Deny each and every allegation contained in paragraph 43 except admit that Jiang shared the duty with Ding and each grocery trip took about one hour.

44.     Deny the allegations contained in paragraph 44 as being incomprehensible since the allegations refer to payments by the "Bosses", but Matsu Corp. was the employer making payments.

45.     Deny the allegations contained in paragraph 45 as being incomprehensible since the allegations refer to payments by the "Bosses", but Matsu Corp. was the employer making payments.

46.     Deny each and every allegation contained in paragraph 46.

47.     Deny the allegations contained in paragraph 47 as being incomprehensible

since the allegations refer to accurate records not being kept by the "Bosses", but Matsu Corp. and/or Matsuri were the employers charged with such responsibility.

48.     Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 48 except admit that Mr. Ding worked at Matsu as a hibachi chef and that he earned a salary of at least $525.00 per week.

49.     Admit the allegations contained in paragraph 49 except deny that the "Bosses" paid or were responsible to pay anything to Mr. Ding because he was employed by Matsu and Matsuri.

50.     Deny each and every allegation contained in paragraph 50.

51.     Deny each and every allegation contained in paragraph 51 except admit that Mr. Ding purchased groceries for staff members.

52.     Deny the allegations contained in paragraph 52 as being incomprehensible since the allegations refer to payments by the "Bosses", but Matsu Corp. and/or Matsuri were the employers making payments.

53.     Deny the allegations contained in paragraph 53 as being incomprehensible since the allegations refer to payments by the "Bosses", but Matsu Corp. and/or Matsuri were the employers making payments.

54.     Deny each and every allegation contained in paragraph 54.

55.     Deny the allegations contained in paragraph 55 as being incomprehensible since the allegations refer to the "Bosses" keeping records, but Matsu Corp. and/or Matsuri were the employers charged with such responsibility.

56.     Deny knowledge or information sufficient to form a belief with respect to

the allegations contained in paragraph 56 except admit that Mr. Duan worked at Matsu as a sushi chef and that he earned a salary of at least $625.00 per week.

57.     Admit the allegations contained in paragraph 57 except deny as being incomprehensible the allegations referring to the "Bosses" making payments because Matsu Corp. and/or Matsuri were the employers charged with such responsibility.

58.     Deny each and every allegation contained in paragraph 58.

59.     Deny each and every allegation contained in paragraph 59 except admit that Mr. Duan was a sushi chef and drove Matsuri employees.

60.     Deny each and every allegation contained in paragraph 60 except admit that Mr. Duan was a sushi chef and drove Matsuri employees.

61.     Deny each and every allegation contained in paragraph 61 and further allege that the van was for the benefit of Mr. Duan because it save him transportation costs to get to and from work.

62.     Deny each and every allegation contained in paragraph 62.

63.     Deny each and every allegation contained in paragraph 63 except admit that said plaintiff was paid the salary to which he was entitled.

64.     Deny each and every allegation contained in paragraph 64.

65.     Deny the allegations contained in paragraph 65 as being incomprehensible since the allegations refer to the "Bosses" keeping records, but Matsu Corp. and/or Matsuri were the employers charged with such responsibility.

66.     Deny each and every allegation contained in paragraph 66 except admit that Song work at Matsu as a sushi chef. He also drove a van.

67.     Admit the allegations contained in paragraph 67.

68.     Deny each and every allegation contained in paragraph 68.

69.     Deny each and every allegation contained in paragraph 69 except admit that Song was a sushi chef, picked up supplies for the restaurant, drove a van for the benefit of Mr. Song because it save him transportation costs to get to and from work and that a supply run generally took one hour.

70.     Deny the allegations contained in paragraph 70 as being incomprehensible since the allegations refer to the "Bosses" making awards, but Matsu Corp. and/or Matsuri were the employers charged with such responsibility and admit that Song got days off with pay.

71.     Deny the allegations contained in paragraph 71 as being incomprehensible since the allegations refer to the "Bosses" making payments, but Matsu Corp. and/or Matsuri were the employers charged with such responsibility.

72.     Deny each and every allegation contained in paragraph 72.

73.     Deny the allegations contained in paragraph 73 as being incomprehensible since the allegations refer to the "Bosses" keeping records, but Matsu Corp. and/or Matsuri were the employers charged with such responsibility.

74.     Deny each and every allegation contained in paragraph 74 except admit investments were made and that meetings were held which culminated in a Shareholders Agreement and that the rights and obligations of all parties are contained within the four corners of that instrument.

75.     Deny knowledge or information sufficient to form a belief with respect to

the allegations contained in paragraph 75 except admit investments were made and that meetings were held which culminated in a Shareholders Agreement and that the rights and obligations of all parties are contained within the four corners of that instrument.

76.     Deny each and every allegation contained in paragraph 76 except admit investments were made and that meetings were held which culminated in a Shareholders Agreement and that the rights and obligations of all parties are contained within the four corners of that instrument as well as any other documents signed by the parties and defendants respectfully invite this Court's attention to said documents at the time of trial to determine the import and significance thereof.

77.     Deny each and every allegation contained in paragraph 77 except admit investments were made and that meetings were held which culminated in a Shareholders Agreement and that the rights and obligations of all parties are contained within the four corners of that instrument as well as any other documents signed by the parties and defendants respectfully invite this Court's attention to said documents at the time of trial to determine the import and significance thereof.

78.     Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 78 except deny that Matsu Corp. and/or Matsuri withheld any documents from plaintiff(s).

79.     Deny each and every allegation contained in paragraph 79 except admit investments were made and that meetings were held which culminated in a Shareholders Agreement and that the rights and obligations of all parties are contained within the four corners of that instrument as well as any other documents signed by the parties and

defendants respectfully invite this Court's attention to said documents at the time of trial to determine the import and significance thereof.

80.     Deny each and every allegation contained in paragraph 80 except admit investments were made and that meetings were held which culminated in a Shareholders Agreement and that the rights and obligations of all parties are contained within the four corners of that instrument and that dividends and/or distributions were made.

81.     Deny each and every allegation contained in paragraph 81 except admit investments were made and that meetings were held which culminated in a Shareholders Agreement and that the rights and obligations of all parties are contained within the four corners of that instrument and that dividends and/or distributions were made at varying times, that each worker received on average at least $500 per month in dividends and/or distributions.

82.     Deny each and every allegation contained in paragraph 82 except admit investments were made and that meetings were held which culminated in a Shareholders Agreement and that the rights and obligations of all parties are contained within the four corners of that instrument and that when plaintiff(s) left the employ of Matsu Corp., principal shareholders did not exercise their rights to purchase the shares so Matsu Corp. purchased their shares.

83.     Deny each and every allegation contained in paragraph 83 except admit that Yang ceased involvement with Matsu Corp., Cao and Cheng succeeded to Yang's shares, and Cao and Cheng became the co-owners of the business.

84.     Deny each and every allegation contained in paragraph 84 except admit

that Ding resumed employment at Matsu Corp.

85.     Deny each and every allegation contained in paragraph 85 except admit that Song became employed at Matsu Corp. as a sushi chef and Jiang and Duan left employment.

86.     Deny each and every allegation contained in paragraph 86 except admit investments were made and that the parties agreed that they would again be governed by the Shareholders Agreement previously entered into.

87.     Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 87 except admit that Song and Ding made investments of $30,000 each.

88.     Deny each and every allegation contained in paragraph 88 except admit investments were made and that the parties agreed that they would (again) be governed by the Shareholders Agreement previously entered into.

89.     Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 89 as to Jiang and/or Duan's "intentions" and further admit that when plaintiff(s) left the employ of Matsu Corp., principal shareholders did not exercise their rights to purchase the shares so Matsu Corp. purchased their shares and that there was contact with Jiang and Duan and workers at the restaurant.

90.     Deny each and every allegation contained in paragraph 90 except admit that meetings were held and that Jiang and Duan were invited to re-invest in Matsu Corp. largely under the same terms and conditions of the Shareholders Agreement and

that the rights and obligations of all parties were contained within the four corners of that instrument.

91.    Deny each and every allegation contained in paragraph 91.

92.    Admit the allegations contained in paragraph 92.

93.    Deny each and every allegation contained in paragraph 93 except admit that meetings were held and that Jiang and Duan were invited to re-invest in Matsu Corp. largely under the same terms and conditions of the Shareholders Agreement and that the rights and obligations of all parties were contained within the four corners of that instrument.

94.    Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 94 especially with respect to the state of mind of Jiang and Duan and admit that investments were made with the intention that the parties would be governed by the terms of the previous Shareholders Agreement.

95.    Deny each and every allegation contained in paragraph 95 except admit investments were made and that the parties agreed that they would (again) be governed by the Shareholders Agreement previously entered into.

96.    Deny each and every allegation contained in paragraph 96 except admit that Matsuri opened around August, 2014.

97.    Deny each and every allegation contained in paragraph 97 except admit that meetings were held and that Jiang and Duan were invited to invest in Matsuri under the same terms and conditions of the Shareholders Agreement and that the rights and obligations of all parties were contained within the four corners of that instrument and

taht plaintiffs made investments.

98.    Deny each and every allegation contained in paragraph 98 except admit that meetings were held and that Jiang and Duan were invited to invest in Matsuri under the same terms and conditions of the Shareholders Agreement and that everyone would be bound thereby.

99.    Deny each and every allegation contained in paragraph 99 except admit that Matsuri was not successful and that the investors received a small amount in dividents and/or distributions.

100.    Deny each and every allegation contained in paragraph 100 except admit that Matsuri was not successful and that all investors essentially lost their investment.

101.    Deny each and every allegation contained in paragraph 101.

102.    Deny each and every allegation contained in paragraph 102 except admit that Duan resigned his position at the restaurant.

103.    Deny each and every allegation contained in paragraph 103 except admit that Matsuri was not successful, all investors essentially lost their investment, and that dividends/distributions were no longer paid.

104.    Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 104 especially with respect to the state of mind of plaintiffs and admit that meetings were held and defendants refused to pay anything to plaintiffs because everyone - including plaintiffs and defendants - had lost their investment.

105.    Deny each and every allegation contained in paragraph 105 except admit

that meetings were held to discuss the loss of investments.

106.   Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 106 except admit a family relationship exists between Cao and a restaurant employee and that Cao directs certain activities.

107.   Deny each and every allegation contained in paragraph 107 except admit that meetings were held.

108.   Admit the allegations contained in paragraph 108 to the extent that a meeting was held on or about April 26, 2017 with investors.

109.   Deny each and every allegation contained in paragraph 109 except admit that meetings were held and everyone was told that their investments were about to be, or were, lost.

110.   Deny each and every allegation contained in paragraph 110 except admit that Lin spoke to investors but the contents of her conversations are unknown.

111.   Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 111 with respect to the state of mind of plaintiffs.

112.   Deny each and every allegation contained in paragraph 112 except admit that meetings were held.

113.   Deny each and every allegation contained in paragraph 113 except admit that a meeting was held on or about June 3, 2017.

114.   Deny each and every allegation contained in paragraph 114 except admit that the parties had discussions.

115.   Deny each and every allegation contained in paragraph 115 except admit

that the parties had discussions.

116.   Deny each and every allegation contained in paragraph 116 except admit that investors communicated with Cao and Cheng to arrange another meeting.

117.   Admit the allegations contained in paragraph 117 except deny that "other employees were sent home."

118.   Deny each and every allegation contained in paragraph 118 except admit that the parties had discussions, plaintiffs were told that Matsuri would close, and that everyone had lost their investment.

119.   Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 119 as to what was said by these people.

120.   Deny each and every allegation contained in paragraph 120.

121.   Deny knowledge or information sufficient to form a belief with respect to the allegations contained in paragraph 121 except admit, upon information and belief, that plaintiffs have sought the "assistance" of Flushing Workers Center.

122.   Deny each and every allegation contained in paragraph 122 except admit that "demands" were made and respectfully invite this Court's attention to said documents at the time of trial to determine the import and significance thereof.

123.   Deny each and every allegation contained in paragraph 123 except admit that a complaint has been filed.

124.   Deny each and every allegation contained in paragraph 124.

125.   Deny each and every allegation contained in paragraph 125.

126.   Deny each and every allegation contained in paragraph 126.

127.   Deny each and every allegation contained in paragraph 127.

128.   Deny each and every allegation contained in paragraph 128.

129.   Deny each and every allegation contained in paragraph 129.

130.   Deny each and every allegation contained in paragraph 130.

131.   Deny each and every allegation contained in paragraph 131.

132.   Deny each and every allegation contained in paragraph 132.

133.   Deny each and every allegation contained in paragraph 133.

134.   Deny each and every allegation contained in paragraph 134.

135.   Deny each and every allegation contained in paragraph 135.

136.   Deny each and every allegation contained in paragraph 136.

137.   Deny each and every allegation contained in paragraph 137.

138.   Deny each and every allegation contained in paragraph 138.

139.   Deny each and every allegation contained in paragraph 139.

140.   Deny each and every allegation contained in paragraph 140.

141.   Deny each and every allegation contained in paragraph 141.

142.   Admit each and every allegation contained in paragraph 142.

143.   Admit each and every allegation contained in paragraph 143.

144.   Deny each and every allegation contained in paragraph 144 except admit investments were made and that the rights and obligations of all parties were as contained in the previous Shareholders Agreement and defendants respectfully invite this Court's attention to said document at the time of trial to determine the import and significance thereof.

145.   Deny each and every allegation contained in paragraph 145.

146.   Deny each and every allegation contained in paragraph 146.

147.   Deny each and every allegation contained in paragraph 147.

148.   Deny each and every allegation contained in paragraph 148.

## AFFIRMATIVE DEFENSE

149.   The primary means which the Department of Labor (DOL) uses to effectuate its goals and policies is voluntary cooperation and compliance with employment laws. The defendants have adopted well-publicized policies prohibiting "off the clock" work and have provided a mechanism for reporting violations. Thus, there should be a reciprocal duty imposed upon employees. The employees cannot intentionally increase their damages by proceeding in the face of harm and must participate in reducing damages. The defendants are given a complete defense especially with respect to FLSA liability involving meal and rest period and time clock violations. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

## SECOND AFFIRMATIVE DEFENSE

150.   The claims being made by plaintiffs are so staggering that it has threatened the ability of defendant corporation to do business. But, although there may have been missteps in defendants' attempts to comply with the myriad of laws, rules and regulations in the Fair Labor Standards Act (FLSA) and other state and city laws, defendants have acted in good faith and through voluntary efforts to comply. A willful violation is only established if plaintiff can show defendants' acts were willful or that

defendants' showed reckless disregard (not just unreasonableness) *Reich v. Waldbaums, Inc.*, 52 F.3d 35 (2nd Cir. 1995).

### THIRD AFFIRMATIVE DEFENSE

151.   The employer's liability, if any, for back wages must be reduced because the statutory violation is not willful.   29 U.S.C. § 255(a).

### FOURTH AFFIRMATIVE DEFENSE

152.   By reason of defendants' good faith, their voluntary efforts to comply, and the reasonable grounds for defendants believing that their acts or omissions were not a violation of FLSA, there should be no assessment of liquidated damages in an amount equal to the back wages owed, if any.   Under Section 11 of the *Portal-to-Portal Act*, the court may, in its sound discretion, award no liquidated damages or award any lesser amount thereof (29 U.S.C. § 260).   Defendants acted in subjective good faith and had objectively reasonable grounds for believing that the acts and/or omissions giving rise to the failure to pay overtime [or other claims] did not violate the FLSA *Herman v. RSR Sec. Servs. Ltd.*, 172 F3rd 132 (2d Cir. 1999).

### FIFTH AFFIRMATIVE DEFENSE

153.   Under the *Portal-to-Portal Act* (29 U.S.C. § 251 *et. seq.*), claims for unpaid wages, overtime, and liquidated damages are restricted to two (2) years prior to the date when claims are filed unless there is proof of defendants' willful violation of the FLSA whereupon a three (3) year statute of limitations is applicable.   In this case, the statute of limitations is two (2) years and claims beyond that period are barred. Moreover, by reason defendants' good faith and their voluntary efforts to comply, there

should be no civil money penalties of up to $1,100 per FLSA violation because there has been no willful conduct. 29 C.F.R. § 578.3.

## SIXTH AFFIRMATIVE DEFENSE

154.   By reason of defendants' good faith, their voluntary efforts to comply, and the reasonable grounds for defendants believing that their acts or omissions were not a violation of FLSA, there should be no assessment of liquidated damages in an amount equal to the back wages owed, if any.  Under Section 11 of the *Portal-to-Portal Act*, the court may, in its sound discretion, award no liquidated damages or award any lesser amount thereof (29 U.S.C. § 260).  Defendants acted in subjective good faith and had objectively reasonable grounds for believing that the acts and/or omissions giving rise to the failure to pay overtime [or other claims] did not violate the FLSA *Herman v. RSR Sec. Servs. Ltd.*, 172 F3rd 132 (2d Cir. 1999).

## SEVENTH AFFIRMATIVE DEFENSE

155.   Under Section 10 of the *Portal-to-Portal Act*, defendants have a complete defense to liability by reason that the act(s) or omission(s) complained of were done in good faith in conformity with and in reliance upon written administrative regulation, order, ruling, approval or interpretation of the Administrator of the Wage and Hour Division of the DOL, or any administrative practice or enforcement policy of the Administrator.

## EIGHTH AFFIRMATIVE DEFENSE

156.   All plaintiffs are blameworthy, censurable and guilty of unlawful conduct including, inter alia, the taking of wages in cash from Matsu Corp. and Matsuri and not

reporting the income on federal and state tax returns, deliberately and intentionally filing false applications with federal agencies to get medicaid benefits by fraudulently mistating their real income, getting distributions and dividends in cash from Matsu Corp. and Matsuri and not reporting same on federal and state income taxes, and obtaining permanent residents' cards by fraudulently completing documents for the Department of Homeland Security. By reason of the foregoing and the "dirty hands" of plaintiffs, this Court should invoke the doctrine of "in pari delicto" and dismiss this case.

## NINTH AFFIRMATIVE DEFENSE

157.  The plaintiffs are not employees but rather are managers and are exempt employees from the protections of the FLSA and Connecticut labor laws.

**WHEREFORE,** these answering defendants demand judgment dismissing the complaint together with the costs and disbursements of this action.

Dated:       Bridgeport, CT
             March 8, 2018

Respectfully submitted,

Elio C.C. Morgan (CT 26687)
Law Offices of Elio C.C. Morgan, LLC
*Attorney for Defendants*
1000 Lafayette Boulevard, 11th Floor
Bridgeport, CT 06604
Tel:   (203) 333-1122
Fax:   (203) 332-9896
Email:  eliolaw@optimum.net

## CERTIFICATION

I hereby certify that on March 13, 2018, a copy of the foregoing was filed electronically and served electronically on all parties. Notice of this filing will also be sent by e-mail to all appearing parties by operation of the Court's electronic filing system. A copy was also served upon plaintiffs' counsel by first class mail addressed to: James Bhandary-Alexander, Esq, New Haven Legal Assistance Association, 426 State Street, New Haven, CT 06510.

_/ss/ecm____
Elio C. Morgan

3